## IN THE UNITED STATES DISTRICT COURT FOR
## THE NORTHERN DISTRICT OF FLORIDA
## (PENSACOLA DIVISION)

| | |
|---|---|
| **LEWIS C. MCKINNEY, JR.,** ) | |
| **(a/k/a MACK MCKINNEY), an individual,** ) | |
| **M2 STUDIO, LLC, an Alabama Limited Liability** ) | |
| **Company and M2 STUDIO, PLLC,** ) | |
| **a Florida Limited Liability  Company,** ) | |
| ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **vs.** ) | **CASE NO.:** |
| ) | |
| **PORTICO, LLC,  an Alabama Limited Liability** ) | |
| **Company, RONALD O'NEILL DURHAM,** ) | |
| **an individual, B.L. HARBERT INTERNATIONAL,** ) | |
| **L.L.C., an Alabama Limited Liability Company,** ) | |
| **JOHN E. GARLINGTON, JR., and individual,** ) | |
| **FIFTH DIMENSION ARCHITECTURE  AND** ) | |
| **INTERIORS, LLC, an Alabama Limited Liability** ) | |
| **Company and WALTER D. FRITTS, an individual,** ) | |
| ) | |
| ) | |
| **Defendants.** ) | |

## COMPLAINT

Plaintiff, LEWIS C. MCKINNEY, JR., (a/k/a Mack McKinney), and Plaintiff M2 STUDIO, PLLC, hereby file this Complaint, and sue Defendants, PORTICO, LLC, RONALD O'NEILL DURHAM, B.L. HARBERT INTERNATIONAL, L.L.C., JOHN E. GARLINGTON, JR., FIFTH DIMENSION ARCHITECTURE AND INTERIORS, LLC, and WALTER D. FRITTS, and allege as follows:

## JURISDICTION AND VENUE

1.      The Court has jurisdiction over the lawsuit pursuant to 28 U.S.C. §§ 1331 and 1338 because Plaintiffs' claims, at least in part, arise under the Copyright Act of 1976, 28 U.S.C. §101

1

et. seq.  This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiffs' state law claims. Further, the Court has diversity jurisdiction under 28 U.S.C. § 1332 since the parties are citizens of different states and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

2.      The condominium project associated with each cause of action is located in Escambia County, Florida.

3.      The Plaintiffs conducted the architectural business and services addressed herein and designed a condominium project in Escambia County, Florida, known as "Portico at Perdido Key."

4.      At all times material hereto, the Defendants conducted business in Escambia County, Florida, including but not limited to, the development, design, and construction of said condominium project.

5.      Venue is proper in this district under 28 U.S.C. §1400(a) because Defendants reside or may be found in this district. Further, each cause of action materially accrued in Escambia County, Florida, including but not limited to, the occurrence of copyright infringement pursuant to 17 U.S.C. § 501 *et. seq*.

## PLAINTIFFS

6.      The Plaintiff, LEWIS C. MCKINNEY, JR., a/k/a Mack McKinney (hereinafter referred to as the "Mack McKinney), is an adult resident citizen of the State of Alabama who provided architectural design services for the condominium project developed in Escambia County, Florida known as "Portico at Perdido Key."

7.      The Plaintiff, M2 STUDIO, LLC, (hereinafter referred to as "M2 Studio"), is an Alabama Limited Liability Company, that is operated by Plaintiff Mack McKinney, and at all

2

material times hereto, is the owner of certain registered copyrights which continued to be infringed upon pursuant to 17 U.S.C. § 501 *et seq.*

8.     The Plaintiff, M2 STUDIO, PLLC, (hereinafter referred to as "M2 Studio"), is a Florida Limited Liability Company, that is operated by Plaintiff Mack McKinney, and at all material times hereto, is the owner of, and/or holds an interest in, certain registered copyrights which continued to be infringed upon pursuant to 17 U.S.C. § 501 *et seq.*

## DEFENDANTS

9.     The Defendant, PORTICO, LLC, is an Alabama Limited Liability Company, that at all material times hereto, is the record owner, builder, developer and seller of the Condominium Project known as "Portico at Perdido Key" located in Escambia County, Florida.

10.     The Defendant, RONALD O'NEILL DURHAM (hereinafter referred to as the "Ron Durham"), is an adult resident citizen of the State of Alabama who, at all times material, was acting for his own personal benefit as well as on behalf of Portico, LLC, for the design, development, and construction of the Condominium Project known as "Portico at Perdido Key" located in Escambia County, Florida.

11.     The Defendant, B.L. HARBERT INTERNATIONAL, L.L.C., (hereinafter referred to as the "B.L. Harbert") is an Alabama  limited liability company and was, at all material times hereto, the record builder of the condominium project known as "Portico at Perdido Key" located in Escambia County, Florida, as well as a project investor with a financial interest in portions of the project's real estate parcels and a direct financial interest in the monetary proceeds derived, or to be derived from the condominium unit sales of said development project.

12.     The Defendant, JOHN E. GARLINGTON, JR., (hereinafter referred to as the "Johnny Garlington"), is an adult resident citizen of the State of Alabama who, at all times

material, was acting for his own personal benefit as well as on behalf of B.L. Harbert International, L.L.C., for the design, development, and construction of the Condominium Project known as "Portico at Perdido Key" located in Escambia County, Florida.

13.     The Defendant, FIFTH DIMENSION ARCHITECTURE AND INTERIORS, LLC, (hereinafter referred to as the "Fifth Dimension") is an Alabama limited liability company that was, following the termination of Plaintiff McKinney, the record architect that prepared the construction design documents and other design documents for the condominium project known as "Portico at Perdido Key" located in Escambia County, Florida, based upon the architectural design concepts of Plaintiff McKinney.

14.     The Defendant, WALTER D. FRITTS, is an adult resident citizen of the State of Alabama, who acted on behalf of Fifth Dimension as its member, and who acted individually as the architect following the termination of Plaintiff McKinney, by preparing the construction design documents and other design documents based upon the architectural design concepts of Plaintiff McKinney.

## **FACTUAL ALLEGATIONS**

15.     The Plaintiffs adopts and reallege paragraphs 1 through 14 of this Complaint.

16.     The parties involved in this case, or their principals, Ron Durham, B.L. Harbert, and Mack McKinney developed an established relationship over twenty years ago wherein they designed, constructed, and marketed numerous major Gulf Coast condominium projects.

17.     In 2004, Plaintiff Mack McKinney was first commissioned as architect by Defendant Portico, LLC, and Defendant Ron Durham to design a condominium project on a specific parcel in Perdido Key, Pensacola, Florida, to be named "Portico" with B.L. Harbert

4

acting as the general contractor.  That project ultimately did not come to fruition due to market conditions during that timeframe and was set aside.

18.     Approximately ten years later, market conditions had improved and the Defendants' desire to construct such a complex on that parcel returned.  An adjacent parcel was acquired by Ron Durham as the acting member of Portico, LLC, the developer of the property located at 14701 Perdido Key Drive, Pensacola, Florida.

19.     Ron Durham and his development entity Portico, LLC, requested architect Plaintiff Mack McKinney to design a three unit-per-floor condominium building with a total allowable density of twenty-seven (27) units on the enlarged parcel.  Initially, architectural design services were provided by Mack McKinney at little or no cost to Durham in order to assist with the likelihood the project would go forward and with the understanding that Mack McKinney would ultimately be confirmed by written contract as the architect of record for the project named "Portico at Perdido Key." Much conceptual and schematic architectural design work was performed by Mack McKinney in 2017, 2018, and 2019 that generated the design that would ultimately be selected for construction on the enlarged parcel. (See Exhibit A).

20.     In April of 2018, Defendants Ron Durham and Portico, LLC, began negotiating the hard contract terms in order for Mack McKinney to proceed with service as architect of record for the condominium known as Portico at Perdido Key.  At the time, Mack McKinney intended to use support services provided by an architectural firm commonly known as WHLC to assist him on the project.  Thus, Mack McKinney began individually doing business as "McKinney – WHLC Architecture."

21.     The initial proposal was edited on three occasions, with the final contract being completed in September and signed by the developer Ron Durham as member of Portico, LLC,

and Plaintiff Mack McKinney, in his individual capacity, to serve as architect on September 19, 2018.  (See Exhibit B).

22.     The Owner-Architect contract terms incorporate and adopt AIA Document B101-2017 and are excerpted below:

### ARTICLE 7     COPYRIGHTS AND LICENSES

§ 7.1 The Architect and the Owner warrant that in transmitting <u>Instruments of Service</u>, or any other information, the transmitting party is <u>the copyright owner of such information</u> or has permission from the copyright owner to transmit such information for its use on the Project.

§ 7.2 The Architect and the <u>Architect's consultants shall be deemed the authors and owners of their respective Instruments of Service</u>, including the Drawings and Specifications, <u>and shall retain all common law, statutory and other reserved rights, including copyrights</u>.

§ 7.3 **The Architect grants to the Owner a nonexclusive license to use the Architect's Instruments of Service** solely and exclusively for purposes of constructing, using, maintain, altering and adding to the Project, **provided that the Owner substantially performs its obligations under this Agreement**, including prompt payment of all sums due pursuant to Article 9 and Article 11. The Architect shall obtain similar nonexclusive licenses from the Architect's consultants consistent with this Agreement. The license granted under this section permits the Owner to authorize the Contractor, Subcontractors, Sub-subcontractors, and suppliers, as well as the Owner's consultants and separate contractors, to reproduce applicable portions of the Instruments of Service, subject to any protocols established pursuant to Section 1.3, solely and exclusively for use in performing services or construction for the Project. If the Architect rightfully terminates this Agreement for cause as provided in Section 9.4, the license granted in Section 7.3 shall terminate.

§ 7.4 Except for the licenses granted in this Article 7, no other license or right shall be deemed granted or implied under this Agreement. The Owner shall not assign, delegate, sublicense, pledge or otherwise transfer any license granted herein to another party without the prior written agreement of the Architect. Any unauthorized use of the Instruments of Service shall be at the Owner's sole risk and without liability to the Architect and the Architect's consultants.

### ARTICLE 9     TERMINATION OR SUSPENSION

§ 9.1 If the Owner fails to make payments to the Architect in accordance with this Agreement, such failure shall be considered substantial nonperformance and cause for termination or, at the Architect's option, cause for suspension of performance of services under this Agreement.

§ 9.4 <u>Either party may terminate this Agreement upon not less than seven days' written notice should the other party fail substantially to perform in accordance with the terms of this Agreement through no fault of the party initiating the termination</u>.

§ 9.5 The Owner may terminate this Agreement upon not less than seven days' written notice to the Architect for the Owner's convenience and without cause.

§ 9.9 The Owner's rights to use the Architect's Instruments of Service in the event of a termination of this Agreement are set forth in Article 7 and Section 9.7.

23.     Following execution of the Agreement, Mack McKinney continued to provide his architectural design services for all aspects of the project. Ground plans, floor plans, unit plans, site plan, and elevations had been designed, prepared and created by Mack McKinney on April 16, 2019, under the document stamp "McKinney Architecture." (See Exhibit C).

24.     Throughout the entire time, Mack McKinney had been regularly assisting with the project's marketing, pricing, etc., often meeting and working with Defendant Ron Durham of Portico, LLC, Defendant general contractor B.L. Harbert, as well as realtors, prospective purchasers, appliance vendors and many others.

25.     At that same time, the project was heavily marketed using the design concept of architect Mack McKinney, including on-site signage that referred to it as "a vision by developer Ron Durham *and architect Mack McKinney*." (See Exhibit D).  With Mack McKinney's design concept, the project quickly surpassed 90% of its pre-sale goals.

26.     During the latter portion of 2019, the loose affiliation between Mack McKinney and WHLC dissolved.  Mack McKinney quickly formed a new project team to serve in a support role filled with specialists that were well familiar with coastal condominium projects, and which had more experience with condominium projects than WHLC, that also included a former employee of WHLC.

27.     On November 22, 2019, Plaintiff Mack McKinney notified Defendant Ron Durham and Defendant Portico, LLC, via email of the termination of involvement of WHLC and the formation of a new project team.  At that time, a detailed project team package was provided which laid out the deep experience of the newly associated support team.  Defendant Ron

Durham responded that same day indicating that he was confident that a strong project team had been assembled.  Mack McKinney offered to have the project team meet with Defendant Ron Durham and Defendant B.L. Harbert.  (See Exhibit E).

28.     On December 19, 2019, four weeks after being notified of the cessation of involvement of WHLC, Defendant Ron Durham/Defendant Portico, LLC, advised Mack McKinney of the Defendants' plan to have him generate a "redesign" of the building.  (See Exhibit F).

29.     McKinney was later advised of specific design modifications that the Defendants wished to pursue, and he commenced a redesign of the project's layout and configuration. On January 16, 2020, Mack McKinney provided Defendant Ron Durham, via email, schematic studies of the redesign which involved a rotation of the initial design.  (See Exhibit G).

30.     This redesign, stamped "Mack McKinney – Architect", was immediately shared by Defendant Ron Durham with Defendant B.L. Harbert, Defendant Johnny Garlington, and the project marketing team for their input and recommendations.

31.     Many group emails were shared by and between Defendant B.L. Harbert, Defendant Ron Durham, real estate sales specialist Kathy Justice, and Plaintiff Mack McKinney. On January 17, 2020, Defendant B.L. Harbert member Jim Rein communicated to that group via reply email with his individual thoughts on Mack McKinney's redesign, to include specific design modifications that he would like to see Mack McKinney pursue.  (See Exhibit H). Another Defendant B.L. Harbert member, Defendant Johnny Garlington, communicated his desire for balcony modifications.  That same day, Kathy Justice communicated to the group her own impressions.  The group dialogue continued with Defendant B.L. Harbert member Jim Rein, on January 23, 2020, offering more redesign suggestions.  (See Exhibit H).

32.     Mack McKinney continued to advance the redesign based upon input from Defendant Ron Durham, Defendant B.L. Harbert, Defendant Johnny Garlington, and real estate specialist Kathy Justice.  On January 29, 2020, Mack McKinney completed redesign schematics that included modification to the parking areas for the project. (See Exhibit G).

33.     Defendants Ron Durham and Portico, LLC, actively requested Mack McKinney to assist with marketing efforts to the extent that he was specifically directed to make custom design changes to particular units based on the requests of certain pre-construction purchasers.

34.     In January and February of 2020, specific design modifications were made to Unit 1002 at the request of the purchaser.  Communications took place directly between the purchaser, Defendant Ron Durham, and architect Mack McKinney to incorporate specific requests.  These requests are documented through February 18, 2020 – three months after notice to Defendant Durham by Mack McKinney of the cessation of involvement of WHLC. (See Exhibit I).

35.     In January and February of 2020, Defendant Ron Durham continued to request Mack McKinney and his design team for further assistance with obtaining the Development Order for the project based on the redesign.  This is documented through February 27, 2020. (See Exhibit J).

36.     It is now known that, during this timeframe, Defendant B.L. Harbert began to pressure Defendant Ron Durham and Defendant Portico, LLC, to move against project architect Mack McKinney.  Mack McKinney was eventually made aware of Defendants B.L. Harbert's and Johnny Garlington's unfounded and pretextual concern of the lack of involvement of WHLC as support for Mack McKinney's architectural work.

37.     At some point, Mack McKinney met with Defendant Durham at which time it was revealed that Defendant Ron Durham, Defendant Portico, LLC, Defendant B.L. Harbert, and

Defendant Johnny Garlington had decided to remove Plaintiff Mack McKinney from the project as architect of record.

38. Initially, Defendant Ron Durham on behalf of Defendant Portico, LLC, presented a "Termination for Convenience" proposal pursuant to the Owner-Architect Agreement / AIA Document B101-2017. (See Exhibit K). The parties were unable to come to an agreement.

39. Thereafter, Defendant Ron Durham on behalf of Defendant Portico, LLC, initiated an unfounded "Termination for Cause." A letter was issued on behalf of Portico, LLC, through counsel on April 2, 2020, which falsely and incorrectly asserted the following:

> "It has come to the attention of Portico that McKinney-WHLC no longer exists (either as an entity, joint venture, partnership, or other venture or arrangement). The severance of McKinney-WHLC relationship apparently happened some time ago but was not timely disclosed to Portico. Portico contracted with McKinney-WHLC and you are aware that Portico was not willing to contract solely with you or your firm for the Portico at Perdido Key project… Because McKinney-WHLC no longer exists and because there was never any assignment of the Agreement to any other architect approved by Portico, McKinney-WHLC has failed to substantially perform in accordance with the terms of the Agreement, all through no fault of Portico. In fact, McKinney-WHLC's breach of the Agreement was concealed from Portico until you were specifically confronted regarding the matter. McKinney-WHLC's actions constitute a material breach of the parties' Agreement. Accordingly, pursuant to Section 9.4 of AIA Document B101-2017, which is part of the Agreement, Portico hereby provides this written notice to McKinney-WHLC Architecture that Portico is terminating the Agreement effective seven (7) days from today's date. Additionally, please note that Section 7.3 of AIA Document B101-2017, which is part of the parties' Agreement, expressly provides that Portico was granted and maintains a nonexclusive license to use the Architect's Instruments of Service…" (See Exhibit L).

40. Quickly and appropriately, Plaintiff Mack McKinney responded to the April 2, 2020, termination letter with an email citing clear and obvious evidence that said letter was entirely untrue and his termination unfounded. The April 8, 2020, response of Mack McKinney stated in part as follows:

> "Your assertion that I did not timely disclose my disassociation with WHLC is likewise inaccurate. I told Ron Durham about it in the Fall of 2019. With full

knowledge of that fact, and without expressing any concerns about WHLC, Ron, BL Harbert and Portico had me do a major redesign of the project in January of 2020.  I have continued to uphold my end of the bargain throughout this project, and there has never been any concern expressed about my services.  The only concern ever expressed to me was the point raised only very recently about WHLC, which as I say, is clearly just a pretext.  I have continued to provide services based on Portico's and its principals' continued assurances and representations of payment and continued work, on which I relied, apparently now to my substantial detriment.  It is Portico, LLC and its principals in fact that have failed to perform, causing me substantial damage and resulting in immediate and material impact to my business.  I reject your assertion that you have a license to use any of my work, design, drawings, or Instruments of Service and hereby demand that you immediately cease and desist from using the same or providing/allowing others to use it.  Consider this email as my formal declaration that your client is in material breach of the contract and has abandoned the contract.  I hereby reserve any and all rights and remedies in connection with this matter, whether at law, in equity, or otherwise." (See Exhibit M).

41.     AIA Document B101-2017, which is part of the underlying Owner-Architect

Agreement, states in pertinent part:

> ARTICLE 7   COPYRIGHTS AND LICENSES
> § 7.1 The Architect and the Owner warrant that in transmitting Instruments of Service, or any other information, the transmitting party is the copyright owner of such information or has permission from the copyright owner to transmit such information for its use on the Project.
> § 7.2 The Architect and the Architect's consultants shall be deemed the authors and owners of their respective Instruments of Service, including the Drawings and Specifications, and shall retain all common law, statutory and other reserved rights, including copyrights.
> § 7.3 **The Architect grants to the Owner a nonexclusive license to use the Architect's Instruments of Service** solely and exclusively for purposes of constructing, using, maintain, altering and adding to the Project, **provided that the Owner substantially performs its obligations under this Agreement**, including prompt payment of all sums due pursuant to Article 9 and Article 11.

42.     Due in part to the material breach of the Owner-Architect Agreement by

Defendant Ron Durham and Defendant Portico, LLC, and for other legal or factual reasons, the

developer had no right to use Plaintiff Mack McKinney's copyrighted Instruments of Service for

construction of the condominium project known as "Portico at Perdido Key."

43.     Defendants were made known of their material breach via Mack McKinney's April 8, 2020, correspondence, and they were expressly advised that there was no "license to use any of my work, design, drawings, or Instruments of Service and hereby demand that you immediately cease and desist."  Prior thereto, Mack McKinney had advised his own project consultants that they should refrain from transmission of any Portico documents to others without his written consent. (See Exhibit N).

44.     Boldly, and wrongly, Defendant Ron Durham, Defendant Portico, LLC, Defendant B.L. Harbert, Defendant Johnny Garlington, Defendant Fifth Dimension, and Defendant Walter D. Fritts have proceeded with for-profit construction of the Portico condominium project based upon Mack McKinney's copyrighted Instruments of Service, breaking ground in 2021.

45.     The architect of record is now Defendant Fifth Dimension Architecture and Interiors, LLC, ("Fifth Dimension")/Defendant Walter Fritts, a former production assistant hired by Mack McKinney several years before.  Defendants Fifth Dimension and Walter D. Fritts provided those remaining contractual services that Plaintiff Mack McKinney had contracted by Defendant Portico, LLC, to provide.   Defendants Fifth Dimension and Walter D. Fritts have unjustly benefitted financially from their role in using the architectural design concepts of Plaintiff McKinney to prepare construction design documents and other services.

46.     Defendant Fifth Dimension and Defendant Walter D. Fritts used Plaintiff Mack McKinney's Instruments of Service in furtherance of their work and reaped financial benefit therefrom, as well as public notoriety as "architect of record" for Portico at Perdido Key. Because of that, many in the public will believe that those Defendants, as opposed to Plaintiff

Mack McKinney, are actually responsible for the project's site-specific primary architectural designs, which is factually untrue.

47.    Construction of the project under Mack McKinney's design concept continues to advance towards completion and the project continues to be marketed for sale via websites and brochures using the design concept developed by Mack McKinney.

48.    In addition to the foregoing, Plaintiff M2 Studio, LLC, and Plaintiff M2 Studio PLLC, are the holders of, and/or hold an interest in, exclusive rights under the Copyright Act of 1976 (17 U.S.C. § 101 et. seq) to use, license, reproduce, distribute, and/or display the site-specific architectural design concepts that are depicted in interior drawings of the subject building as architectural works and technical drawings, as well as associated renderings, which include the 2019 redesign of the Portico at Perdido condominium project.   Defendants continue to proceed with construction of Portico at Perdido Key based upon Plaintiff M2 Studio's Federally copyrighted works.  (See Exhibit O).

## COUNT ONE – BREACH OF CONTRACT
### (Portico, LLC, and Ronald Durham)

49.    The Plaintiff McKinney adopts and realleges paragraphs 1 through 48 of this Complaint.

50.    This is an action for a breach of contract, the damages of which exceed the minimum jurisdictional limits of this Court.

51.    Plaintiff Mack McKinney and Defendant Portico, LLC, and Defendant Ron Durham entered into a contract on September 19, 2018, entitled Preliminary Owner-Architect Agreement (hereinafter "Owner-Architect Agreement" or "Agreement") to provide architectural design services for the Portico at Perdido Key condominium development located at 14701

Perdido Key Dr., Pensacola, Florida, 32507.  The Owner-Architect Agreement's terms incorporate and adopt AIA Document B101-2017. (See Exhibit B).

52.     The Agreement calls for work to be provided in seven (7) phases. The phases are generally described as follows: (a) Phase I – Pre-design and initial schematic design; (b) Phase II – Schematic Design Solutions; (c) Phase III – Provide Owner/Developer with building plans/elevations, two building sections and eight renderings; (d) Phase IV – Design Development; (e) Phase V - Construction Documents; (f) Phase VI – Project implementation, value engineering, and notice to proceed; and (g) Phase VII – Construction Administration.

53.     The Agreement also calls for a total contractual fee of $1,000,000 to be paid for those architectural design services.

54.     Following execution of the Agreement, Plaintiff Mack McKinney provided the required architectural design services to the satisfaction of Defendant Portico, LLC, and Defendant Ron Durham.

55.     Defendants were notified on November 22, 2019, of the cessation of involvement of WHLC as McKinney's support team, and his formation of a new project team.  (See Exhibit E). This did not result in any attempt to terminate the involvement of Mack McKinney as project architect.  Rather, it resulted in the request for additional design work from Plaintiff McKinney.

56.     On December 19, 2019, four weeks after being notified of the cessation of involvement of WHLC, Defendant Ron Durham/Defendant Portico, LLC, advised Mack McKinney of the Defendants' plan to have him generate a "redesign" of the building.  (See Exhibit F).

57.     On January 16, 2020, Mack McKinney provided Defendant Ron Durham, *via* email, new schematic studies of the redesign which involved a rotation of the initial design.  (See

Exhibit G).  This redesign, stamped "Mack McKinney – Architect", was immediately shared by Defendant Ron Durham with Defendant B.L. Harbert and the project marketing team for their input and recommendations.

58.     Plaintiff McKinney would continue to provide additional architectural design services based on the recommendations of Defendants Ron Durham, Portico, LLC, B.L. Harbert, as well as further assistance with Florida Department of Environmental Protection applications, and marketing through February of 2020 until efforts to terminate his involvement as architect commenced.

59.     Defendant Ron Durham on behalf of Defendant Portico, LLC, presented a "Termination for Convenience" proposal pursuant to the Owner-Architect Agreement / AIA Document B101-2017. (See Exhibit K). The parties were unable to come to an agreement.

60.     Thereafter, Defendant Ron Durham on behalf of Defendant Portico, LLC, initiated an unfounded "Termination for Cause." A letter was issued on behalf of Portico, LLC, through counsel on April 2, 2020, which falsely and incorrectly asserted the following:

> "It has **come to the attention of Portico that McKinney-WHLC no longer exists** (either as an entity, joint venture, partnership, or other venture or arrangement).  **The severance** of McKinney-WHLC relationship apparently **happened some time ago but was not timely disclosed to Portico**.  Portico contracted with McKinney-WHLC and you are aware that Portico was not willing to contract solely with you or your firm for the Portico at Perdido Key project… **Because McKinney-WHLC no longer exists and because there was never any assignment of the Agreement to any other architect approved by Portico, McKinney-WHLC has failed to substantially perform in accordance with the terms of the Agreement, all through no fault of Portico**.  **In fact, McKinney-WHLC's breach of the Agreement was concealed from Portico until you were specifically confronted regarding the matter**.  McKinney-WHLC's actions constitute a material breach of the parties' Agreement.  Accordingly, pursuant to Section 9.4 of AIA Document B101-2017, which is part of the Agreement, Portico hereby provides this written notice to McKinney-WHLC Architecture that **Portico is terminating the Agreement** effective seven (7) days from today's date.  Additionally, please note that Section 7.3 of AIA Document B101-2017, which is part of the parties' Agreement, expressly provides that

Portico was granted and maintains a nonexclusive license to use the Architect's Instruments of Service…" (See Exhibit L).

61.     Quickly and appropriately, Mack McKinney responded to the April 2, 2020, termination letter with an email citing clear and obvious evidence that said letter was entirely untrue and his termination unfounded.  The April 8, 2020, response of Mack McKinney stated in part as follows:

> "**Your assertion that I did not timely disclose my disassociation with WHLC is likewise inaccurate.  I told Ron Durham about it in the Fall of 2019**.  **With full knowledge of that fact, and without expressing any concerns about WHLC, Ron, BL Harbert and Portico had me do a major redesign of the project in January of 2020.**  I have continued to uphold my end of the bargain throughout this project, and there has never been any concern expressed about my services.  The only concern ever expressed to me was the point raised only very recently about WHLC, which as I say, is clearly just a pretext.  **I have continued to provide services based on Portico's and its principals' continued assurances and representations of payment and continued work**, on which I relied, apparently now to my substantial detriment.  **It is Portico, LLC and its principals in fact that have failed to perform, causing me substantial damage** and resulting in immediate and material impact to my business.  I reject your assertion that you have a license to use any of my work, design, drawings, or Instruments of Service and hereby demand that you immediately cease and desist from using the same or providing/allowing others to use it.  Consider this email as my formal declaration that your client is in material breach of the contract and has abandoned the contract.  I hereby reserve any and all rights and remedies in connection with this matter, whether at law, in equity, or otherwise." (See Exhibit M).

62.     AIA Document B101-2017, which is part of the underlying Owner-Architect Agreement, states in pertinent part:

> ARTICLE 7     COPYRIGHTS AND LICENSES
> § 7.1 The Architect and the Owner warrant that in transmitting <u>Instruments of Service</u>, or any other information, the transmitting party is <u>the copyright owner of such information</u> or has permission from the copyright owner to transmit such information for its use on the Project.
> § 7.2 The Architect and the <u>Architect's consultants shall be deemed the authors and owners of their respective Instruments of Service</u>, including the Drawings and Specifications, <u>and shall retain all common law, statutory and other reserved rights, including copyrights</u>.

§ 7.3 **The Architect grants to the Owner a nonexclusive license to use the Architect's Instruments of Service** solely and exclusively for purposes of constructing, using, maintain, altering and adding to the Project, **provided that the Owner substantially performs its obligations under this Agreement**, including prompt payment of all sums due pursuant to Article 9 and Article 11.

63.     The wrongful termination of Mack McKinney constitutes a material breach of the Agreement.  Due in part to the material breach of the Owner-Architect Agreement by Defendant Ron Durham on behalf of Portico, LLC, and for other legal or factual reasons, the developer had no further right to use Plaintiff Mack McKinney's copyrighted Instruments of Service for construction of the condominium project known as "Portico at Perdido Key."

64.     Defendants were made known of their material breach via Mack McKinney's April 8, 2020, reply correspondence, and they were expressly advised that there was no "license to use any of my work, design, drawings, or Instruments of Service and hereby demand that you immediately cease and desist."  Prior thereto, Mack McKinney also advised his own project consultants that they should refrain from transmission of any Portico documents to others without his written consent. (See Exhibit N).

65.     Plaintiff McKinney performed all terms and conditions required to be performed under the contract until it was materially breached by Defendants.  Defendants' subsequent inappropriate and illegal use of Plaintiff McKinney's AIA "copyrighted" materials in order to initiate and proceed with construction of the Portico at Perdido Key condominium project is a continuing breach of said Agreement.

66.     Defendants further breached the contract by refusing to allow Plaintiff McKinney to perform under the Agreement and/or pay the full $1,000,000 amount for services as agreed.

WHEREFORE, Plaintiff Mack McKinney demands judgment against Defendant Portico, LLC, and Defendant Ron Durham for money damages under the Agreement, interest, and costs, and for any other relief as this Court may deem appropriate.

### COUNT TWO– COPYRIGHT INFRINGEMENT
### 17 U.S.C. § 501 *et seq.* and
### AIA DOCUMENT B101-2017

### (Portico, LLC, and Ronald Durham)

67.     The Plaintiffs adopt and reallege paragraphs 1 through 66 of this Complaint.

68.     This is an action for copyright infringement by Plaintiff M2 Studio, LLC, and Plaintiff M2 Studio PLLC, pursuant to 17 U.S.C. §501 *et seq.* Additionally, this is an action of contractual copyright infringement by Plaintiff McKinney pursuant to the underlying Owner – Architect Agreement (AIA Document B101-2017).

69.     Plaintiff Mack McKinney supplied site-specific architectural design services, necessary for the planning, design, and construction of the Portico at Perdido Key condominium project to be located at 14701 Perdido Key Drive, Pensacola, Florida, 32507.

70.     The Plaintiff's design concept became the chosen design for construction of the Portico at Perdido Key condominium project.

71.     The Owner-Architect Agreement with Plaintiff for his services was wrongfully Terminated by these Defendants.

72.     Under Article 7 of AIA Document B101-2017, "**The Architect grants to the Owner a nonexclusive license to use the Architect's Instruments of Service** solely and exclusively for purposes of constructing, using, maintain, altering and adding to the Project, **provided that the Owner substantially performs its obligations under this Agreement**, including prompt payment of all sums due pursuant to Article 9 and Article 11."

18

73.     Following their wrongful termination of McKinney, which constituted a material breach of the Owner-Architect Agreement, Defendants engaged in the subsequent inappropriate and illegal use of Plaintiff McKinney's AIA "copyrighted" materials in order to initiate and proceed with construction of the Portico at Perdido Key condominium project for which he has not been compensated.

74.     In addition to the foregoing, at all times relevant hereto, Plaintiff M2 Studio, LLC, and Plaintiff M2 Studio, PLLC, have been and still are the holders of exclusive rights under the Copyright Act of 1976 (17 U.S.C. § 101 et. seq) to use, license, reproduce, distribute, and/or display the site-specific architectural design concepts that are depicted in interior drawings of the subject building as architectural works and technical drawings, as well as associated renderings, which include the 2019 redesign of the Portico at Perdido condominium project.

75.     Specifically, Plaintiff M2 Studio, LLC, applied for and subsequently received Federal copyright registrations under the Copyright Act on his site-specific architectural design concepts.  Further, Plaintiff M2 Studio, PLLC, holds an interest in said registrations. Those Certificates of Registration are based upon interior drawings of the subject building as architectural works, technical drawings, and renderings, and they are recorded as VAu 1-447-490 (Registration Decision Date Nov. 2, 2021; Number VAu 1-447-490) and VAu 1-447-491 (Registration Decision Date Jan. 24, 2022; Number VAu 1-454-066). (See Exhibit O).  The Certificates of Registration were received on November 2, 2021, and January 24, 2022.

76.     As addressed, Defendants have engaged in tortious activity, by virtue of construction of the Portico at Perdido Key condominium project based upon Federally copyrighted and AIA copyrighted Instruments of Service.

77.     As of the date of filing this Complaint, Defendants continue to proceed with construction of Portico at Perdido Key based upon Plaintiffs' AIA copyrighted Instruments of Service and Federally copyrighted works, which these Defendants have shared with other Defendants who have wrongfully incorporated same into their own work.  All Defendants have unlawfully and unjustly profited from this copyright infringement to the great detriment of Plaintiffs, and Plaintiffs have suffered, and continue to suffer, severe financial losses.

78.     Defendants have committed all of the aforesaid acts deliberately, willfully, maliciously and oppressively, without regard to Plaintiffs' proprietary rights.

79.     As result of the above-described conduct by Defendants, Plaintiffs have been damaged in an amount to be proven at trial.

80.     By reason of the copyright infringement described above, Plaintiffs are entitled to recover Defendants' profits.

81.     In the alternative, at the election of Plaintiffs, they are entitled to recover from Defendants statutory damages up to $150,000 per act of Federal copyright infringement for Defendants' willful infringement.

WHEREFORE, Plaintiffs pray for relief as follows:

(A)  For an Order enjoining Defendants, their officers, agents, employees, and those acting in concert or conspiracy with them, temporarily during the pendency of this action and permanently thereafter from:

   (i)  infringing or continuing to participate in the in the infringement by others of the subject copyrighted materials;

   (ii) Copying, duplicating, selling, licensing, displaying, distributing, or otherwise using the copyrighted materials and designs to which Plaintiffs

are the owners of exclusive rights under the respective copyrights or

derivative works based thereon;

(B)     That Defendants be required to account for and pay over to Plaintiffs the actual

damages suffered by Plaintiffs as a result of the infringement and any profits of the Defendants

attributable to the infringement of Plaintiffs' copyright or exclusive rights under the copyright to

pay such damages to Plaintiffs as to this Court shall appear just and proper within the provisions

of the Copyright Act, or, in the alternative, at Plaintiffs' election, statutory damages for

infringement of each separate copyright as set forth in 17 U.S.C § 504;

(C)     For an award of costs under 17 U.S.C § 505;

(D)     For an award of pre-judgment and post-judgment interest in the maximum amount

permitted by law.

(E)     For such other and further relief as this Court deems just and proper.

**COUNT THREE– UNJUST ENRICHMENT**
**(Portico, LLC, and Ronald Durham)**

82.     The Plaintiff McKinney adopts and realleges paragraphs 1 through 81 of this

Complaint.

83.     This is an action for unjust enrichment, the damages of which exceed the minimum

jurisdictional limits of this Court.

84.     At the Request of Defendant Portico, LLC, and Defendant Ron Durham, Plaintiff

Mack McKinney supplied architectural and other professional services necessary for the

planning, design, and construction of the Portico at Perdido Key condominium project located at

14701 Perdido Key Drive, Pensacola, Florida, 32507.

85.     As a result of this request, valuable site-specific architectural design and other professional services were provided.  The Plaintiff's design concept became the chosen design for construction of the Portico at Perdido Key condominium project.

86.     The Owner-Architect Agreement was wrongfully terminated by the Defendants. As such, Plaintiff Mack McKinney was not fully compensated for his services rendered, or to be rendered.

87.     Under Article 7 of AIA Document B101-2017, "**The Architect grants to the Owner a nonexclusive license to use the Architect's Instruments of Service** solely and exclusively for purposes of constructing, using, maintain, altering and adding to the Project, **provided that the Owner substantially performs its obligations under this Agreement**, including prompt payment of all sums due pursuant to Article 9 and Article 11."

88.     As a result of material breach, Plaintiff Mack McKinney has not been compensated for the subsequent tortious and illegal use of Plaintiff McKinney's AIA "copyrighted" design materials and Instruments of Service by Defendants in order to initiate and proceed with construction of the Portico at Perdido Key condominium project.

89.     Plaintiff McKinney did not supply any of the architectural design services gratuitously and Defendants had knowledge of this fact.

90.     Defendants have been unjustly enriched by the incorporation of Plaintiff's architectural design and professional services into the project's construction upon the real property owned by Defendants without payment for them.

WHEREFORE, Plaintiff Mack McKinney demands judgment against Defendant Portico, LLC, and Defendant Ron Durham for the reasonable value of the above-mentioned architectural

and professional services, and expenses, and for any for any other relief as the Court may deem appropriate.

### COUNT FOUR– QUANTUM MERUIT
### (Portico, LLC, and Ronald Durham)

91.     The Plaintiff McKinney adopts and realleges paragraphs 1 through 90 of this Complaint.

92.     This is an action for *quantum meruit*, the damages of which exceed the minimum jurisdictional limits of this Court.

93.     At the Request of Defendant Portico, LLC, and Defendant Ron Durham, Plaintiff Mack McKinney supplied architectural services necessary for the planning, design, and construction of the Portico at Perdido Key condominium project located at 14701 Perdido Key Drive, Pensacola, Florida, 32507.

94.     Plaintiff Mack McKinney provided valuable site-specific architectural design and professional services that became the chosen design for construction of the Portico at Perdido Key condominium project. Due to their wrongful termination of Plaintiff, Defendants unlawfully incorporated his services and copyrighted property into the condominium project and real estate owned by Defendants.

95.     Defendants received great benefit from the requested services and their subsequent use of the Instruments of Service.   Plaintiff Mack McKinney is entitled to the value of his services under *Quantum Meruit*.

WHEREFORE, Plaintiff Mack McKinney demands judgment against Defendant Portico, LLC, and Defendant Ron Durham for the reasonable value of the above-mentioned architectural and professional services and copyrighted material, and expenses, and for any other relief as the Court may deem appropriate.

## COUNT FIVE– CONVERSION
### (Portico, LLC, and Ronald Durham)

96.     The Plaintiff McKinney adopts and realleges paragraphs 1 through 95 of this Complaint.

97.     This is an action for conversion, the damages of which exceed the minimum jurisdictional limits of this Court.

98.     Plaintiff Mack McKinney and Defendant Portico, LLC, and Defendant Ron Durham entered into a contract on September 19, 2018, entitled Preliminary Owner-Architect Agreement (hereinafter "Owner-Architect Agreement" or "Agreement") to provide architectural design services for the Portico at Perdido Key condominium development to be located at 14701 Perdido Key Dr., Pensacola, Florida, 32507.  The Owner-Architect Agreement's terms incorporate and adopt AIA Document B101-2017 a.  (See Exhibit B).

99.     Following execution of the Agreement, Plaintiff Mack McKinney provided the required architectural design services to the satisfaction of Defendant Portico, LLC, and Defendant Ron Durham.

100.    Defendants were notified by Plaintiff on November 22, 2019, of the non-involvement of WHLC as McKinney's support team and the formation of a new project team. (See Exhibit E).  This did not result in any attempt to terminate the involvement of Mack McKinney as project architect.  Rather, it resulted in the request for additional design work.

101.    Plaintiff Mack McKinney was notified by Defendants of their plan to have him generate a "redesign" of the building.  (See Exhibit F).  On January 16, 2020, Mack McKinney provided Defendant Ron Durham, via email, schematic studies of the redesign which involved a rotation of the initial design.  (See Exhibit G).

102.    Plaintiff continued to provide additional architectural design services, as well as assistance with Florida Department of Environmental Protection applications, and marketing assistance through February of 2020 until efforts to terminate his involvement commenced.

103.    Defendant Ron Durham and Defendant Portico, LLC, initiated an unfounded and wrongful "Termination for Cause" against Plaintiff McKinney. A letter was issued on behalf of Portico, LLC, through counsel on April 2, 2020, which falsely and incorrectly asserted the following:

> "It has **come to the attention of Portico that McKinney-WHLC no longer exists** (either as an entity, joint venture, partnership, or other venture or arrangement). **The severance** of McKinney-WHLC relationship apparently **happened some time ago but was not timely disclosed** to Portico. Portico contracted with McKinney-WHLC and you are aware that Portico was not willing to contract solely with you or your firm for the Portico at Perdido Key project... **Because McKinney-WHLC no longer exists and because there was never any assignment of the Agreement to any other architect approved by Portico, McKinney-WHLC has failed to substantially perform in accordance with the terms of the Agreement**, all through no fault of Portico. **In fact, McKinney-WHLC's breach of the Agreement was concealed from Portico until you were specifically confronted regarding the matter**. McKinney-WHLC's actions constitute a material breach of the parties' Agreement. Accordingly, pursuant to Section 9.4 of AIA Document B101-2017, which is part of the Agreement, Portico hereby provides this written notice to McKinney-WHLC Architecture that **Portico is terminating the Agreement** effective seven (7) days from today's date. Additionally, please note that Section 7.3 of AIA Document B101-2017, which is part of the parties' Agreement, expressly provides that Portico was granted and maintains a nonexclusive license to use the Architect's Instruments of Service..." (See Exhibit L).

104.    Plaintiff Mack McKinney responded to the April 2, 2020, termination letter with an email citing clear and obvious evidence that said letter was entirely untrue and his termination was unfounded. The April 8, 2020, response of Mack McKinney stated in part as follows:

> "Your assertion that I did not timely disclose my disassociation with WHLC is likewise inaccurate. I told Ron Durham about it in the Fall of 2019. With full knowledge of that fact, and without expressing any concerns about WHLC, Ron, BL Harbert and Portico had me do a major redesign of the project in January of 2020. I have continued to uphold my end of the bargain throughout this project,

and there has never been any concern expressed about my services.  The only concern ever expressed to me was the point raised only very recently about WHLC, which as I say, is clearly just a pretext.  I have continued to provide services based on Portico's and its principals' continued assurances and representations of payment and continued work, on which I relied, apparently now to my substantial detriment.  **It is Portico, LLC and its principals in fact that have failed to perform, causing me substantial damage and resulting in immediate and material impact to my business.  I reject your assertion that you have a license to use any of my work, design, drawings, or Instruments of Service and hereby demand that you immediately cease and desist from using the same or providing/allowing others to use it.  Consider this email as my formal declaration that your client is in material breach of the contract and has abandoned the contract.**  I hereby reserve any and all rights and remedies in connection with this matter, whether at law, in equity, or otherwise." (See Exhibit M).

105.    AIA Document B101-2017, which is part of the Owner-Architect Agreement,

states in pertinent part:

ARTICLE 7    COPYRIGHTS AND LICENSES
§ 7.1 The Architect and the Owner warrant that in transmitting Instruments of Service, or any other information, the transmitting party is the copyright owner of such information or has permission from the copyright owner to transmit such information for its use on the Project.
§ 7.2 The Architect and the Architect's consultants shall be deemed the authors and owners of their respective Instruments of Service, including the Drawings and Specifications, and shall retain all common law, statutory and other reserved rights, including copyrights.
§ 7.3 **The Architect grants to the Owner a nonexclusive license to use the Architect's Instruments of Service** solely and exclusively for purposes of constructing, using, maintain, altering and adding to the Project, **provided that the Owner substantially performs its obligations under this Agreement**, including prompt payment of all sums due pursuant to Article 9 and Article 11.

106.    The wrongful termination of Mack McKinney constitutes a material breach of the

Agreement.  Due in part to the material breach of the Owner-Architect Agreement by Defendant

Ron Durham and Defendant Portico, LLC, and for other legal and factual reasons, the developer

had no right to use Mack McKinney's copyrighted Instruments of Service or design concepts for

construction of the condominium project known as Portico at Perdido Key.

107.    Defendants were made known of their material breach via Mack McKinney's April 8, 2020, correspondence, and they were expressly advised that there was no "license to use any of my work, design, drawings, or Instruments of Service and hereby demand that you immediately cease and desist."

108.    Despite the Plaintiff's demands that Defendants not use his work on the condominium development, Defendants have illegally incorporated and used Plaintiff Mack McKinney's copyrighted work, drawings, designs and Instruments of Service to proceed with construction of the project.

109.    Defendant's retained Fifth Dimension to provide those remaining contractual services that Mack McKinney had contracted to provide, including incorporating and using his copyrighted design concepts and Instruments of Service into the creation of the construction design documents, architectural drawings/plans necessary to build the condominium project. Defendant Fifth Dimension has benefitted financially from its role.

110.    Construction of the project under Plaintiff Mack McKinney's design concept continues to advance towards completion and the project continues to be marketed for sale via websites and brochures using the design concept developed by Mack McKinney.

111.    The aforementioned intellectual property and work product of Plaintiff McKinney has been wrongfully used by Defendants to benefit them despite his demand that they not do so per the Agreement.  As construction continues to proceed, Defendants have made it clear that they will not cease and desist from their use of same, nor will they return all architectural materials and design information used in construction and marketing of the project.  The actions of these Defendants amounts to conversion of Plaintiff's property, tangible and intangible, resulting in the deprivation of same and causing Plaintiff to suffer damages.

WHEREFORE, Plaintiff Mack McKinney demands judgment against Defendant Portico, LLC, and Defendant Ron Durham for compensatory damages associated with the above-mentioned conversion of architectural and professional services and copyrighted material, Court costs, and for any other relief as the Court may deem appropriate.

### COUNT SIX– COPYRIGHT INFRINGEMENT
### 17 U.S.C. § 501 *et seq.*  and
### AIA DOCUMENT B101-2017

### (B.L. Harbert and Johnny Garlington)

112.    The Plaintiffs adopt and reallege paragraphs 1 through 111 of this Complaint.

113.    This is an action for copyright infringement by Plaintiff M2 Studio, LLC, and Plaintiff M2 Studio, PLLC, pursuant to 17 U.S.C. §501 *et seq*.  Additionally, this is an action of contractual copyright infringement by Plaintiff McKinney pursuant to the underlying Owner – Architect Agreement (AIA Document B101-2017).

114.    At all times material, Defendants B.L. Harbert and Johnny Garlington were aware that Plaintiff Mack McKinney supplied site-specific architectural design and other professional services, labor, and expenses necessary for the planning, design, and construction of the Portico at Perdido Key condominium project to be located at 14701 Perdido Key Drive, Pensacola, Florida, 32507.

115.    The Plaintiff's design concept, with the involvement of B.L. Harbert and Johnny Garlington, became the chosen design for construction of the Portico at Perdido Key condominium project.

116.    Defendant B.L. Harbert and Defendant Johnny Garlington improperly and tortiously influenced Defendants Ron Durham and Portico, LLC, to terminate their contract with

Plaintiff McKinney.  Defendants B.L. Harbert and Johnny Garlington, at all times material, was aware that Plaintiff's termination was wrongful.

117.    Defendants B.L. Harbert and Johnny Garlington were fully aware that Plaintiff's Owner-Architect Agreement incorporated Article 7 of AIA Document B101-2017, which provided: "**The Architect grants to the Owner a nonexclusive license to use the Architect's Instruments of Service** solely and exclusively for purposes of constructing, using, maintain, altering and adding to the Project, **provided that the Owner substantially performs its obligations under this Agreement**, including prompt payment of all sums due pursuant to Article 9 and Article 11."

118.    Defendants B.L. Harbert and Johnny Garlington were fully aware that it was Plaintiff McKinney's position that he was wrongfully terminated and no party had, or has, the right to use his copyrighted Instruments and Services, or other materials, without his express permission.  Thereafter, Defendants B.L. Harbert and Johnny Garlington engaged in the subsequent tortious inappropriate and illegal use of Plaintiff McKinney's AIA "copyrighted" materials in order to initiate and proceed with construction of the Portico at Perdido Key condominium.

119.    In addition to the foregoing, at all times relevant hereto, Plaintiff M2 Studio, LLC, and Plaintiff M2 Studio, PLLC have been and still are the holders of exclusive rights under the Copyright Act of 1976 (17 U.S.C. § 101 et. seq) to use, license, reproduce, distribute, and/or display the site-specific architectural design concepts that are depicted in interior drawings of the subject building as architectural works and technical drawings, as well as associated renderings, which include the 2019 redesign of the Portico at Perdido condominium project.

120.     Specifically, Plaintiff M2 Studio, LLC, applied for and subsequently received Federal copyright registrations under the Copyright Act on his site-specific architectural design concepts.  Further, Plaintiff M2 Studio, PLLC, holds an interest in said registrations.  Those Certificates of Registration are based upon interior drawings of the subject building as architectural works, technical drawings, and renderings, and they are recorded as VAu 1-447-490 (Registration Decision Date Nov. 2, 2021; Number VAu 1-447-490) and VAu 1-447-491 (Registration Decision Date Jan. 24, 2022; Number VAu 1-454-066). (See Exhibit O).  The Certificates of Registration were received on November 2, 2021, and January 24, 2022.

121.     As addressed above, Defendants B.L. Harbert and Johnny Garlington have engaged in copyright infringement, by virtue of constructing the Portico at Perdido Key condominium project with construction design documents created with Federally copyrighted and AIA copyrighted Instruments of Service.

122.     As of the date of filing this Complaint, Defendants B.L. Harbert and Johnny Garlington have continued to proceed with the construction of Portico at Perdido Key based upon Plaintiff McKinney's AIA copyrighted Instruments of Service and Plaintiff M2 Studio, LLC's and Plaintiff M2 Studio, PLLC's Federally copyrighted works, which these Defendants have shared with other Defendants who have wrongfully incorporated same into their own work. All Defendants have unlawfully and unjustly profited from this copyright infringement to the great detriment of Plaintiffs, and Plaintiffs have suffered, and continue to suffer, severe financial losses.

123.     Defendants B.L. Harbert and Johnny Garlington have committed all of the aforesaid acts deliberately, willfully, maliciously and oppressively, without regard to Plaintiffs' proprietary rights.

124.    As result of the above-described conduct by Defendants B.L. Harbert and Johnny Garlington, Plaintiffs have been damaged in an amount to be proven at trial.

125.    By reason of the copyright infringement described above, Plaintiffs are entitled to recover Defendants' profits to the extent that same are not included as part of their damages.

126.    In the alternative, at the election of Plaintiffs, they are entitled to recover from Defendants statutory damages up to $150,000 per act of Federal copyright infringement for Defendants' willful copyright infringement.

WHEREFORE, Plaintiffs pray for relief as follows:

(A)  For an Order enjoining Defendants, their officers, agents, employees, and those acting in concert or conspiracy with them, temporarily during the pendency of this action and permanently thereafter from:

     (i)    infringing or continuing to participate in the in the infringement by others of the subject copyrighted materials;

     (ii)   Copying, duplicating, selling, licensing, displaying, distributing, or otherwise using the copyrighted materials and designs to which Plaintiffs are the owners of exclusive rights under the respective copyrights or derivative works based thereon;

(B)    That Defendants be required to account for and pay over to Plaintiffs the actual damages suffered by Plaintiffs as a result of the infringement and any profits of the Defendants attributable to the infringement of Plaintiffs' copyright or exclusive rights under the copyright to pay such damages to Plaintiffs as to this Court shall appear just and proper within the provisions of the Copyright Act, or, in the alternative, at Plaintiffs' election, statutory damages for infringement of each separate copyright as set forth in 17 U.S.C § 504;

(C)     For an award of costs under 17 U.S.C § 505;

(D)     For an award of pre-judgment and post-judgment interest in the maximum amount permitted by law.

(E)     For such other and further relief as this Court deems just and proper.

## COUNT SEVEN– TORTIOUS INTERFERENCE WITH CONTRACT
### (B.L. Harbert and Johnny Garlington)

127.    The Plaintiff McKinney adopts and realleges paragraphs 1 through 126 of this Complaint.

128.    This is an action for tortious interference with a contract, the damages of which exceed the minimum jurisdictional limits of this Court.

129.    At all times material, Defendants B.L. Harbert and Johnny Garlington were aware of the architectural design services, both pre-2018 contract and after, provided by Plaintiff Mack McKinney to Defendants Ron Durham and Portico, LLC.

130.    Defendants B.L. Harbert and Johnny Garlington were directly aware of the final contract (Owner-Architect Agreement) finalized in September and signed on September 19, 2018, by the developer Ron Durham as member of Portico, LLC, and Mack McKinney, in his individual capacity, to serve as architect.  (See Exhibit B).

131.    During the duration of the contract, Defendants Ron Durham, Portico, LLC, B.L. Harbert, and Johnny Garlington were made aware by Plaintiff of the non-involvement of WHLC as McKinney's support team and the formation of a new project team.  (See Exhibit E).

132.    After months of Plaintiff Mack McKinney providing additional architectural design services, including a redesign of the entire project with the direct participation of B.L. Harbert and Johnny Garlington, Defendants B.L. Harbert and Johnny Garlington began to pressure Defendants

Ron Durham and Portico, LLC, to move against project architect Mack McKinney as party to the Owner-Architect Agreement.

133.    Defendants B.L. Harbert and Johnny Garlington intentionally and tortiously influenced Defendants Ron Durham and Portico, LLC, to terminate their Owner-Architect Agreement with Plaintiff McKinney as architect of record for Portico at Perdido Key.  As a result of the actions of Defendants B.L. Harbert and Johnny Garlington, Defendants Ron Durham and Portico, LLC, issued an unfounded and wrongful "Termination for Cause" letter notifying Plaintiff of his removal as architect of record allegedly due failure to advise the parties of WHLC's lack of involvement.  That pretext for termination was untrue and Defendants knew full well.

134.    Because of his wrongful termination at the request of Defendants B.L. Harbert and Johnny Garlington, Plaintiff was unable to complete the performance of his $1,000,000 Owner-Architect Agreement with Defendants Ron Durham and Portico, LLC, resulting in direct financial harm to him and causing other damages, to include the wrongful conversion of his intellectual property, drawings, schematics, and Instruments of Service.

WHEREFORE, Plaintiff Mack McKinney demands judgment against Defendants B.L. Harbert and Johnny Garlington for compensatory damages associated with the tortious interference with the above-mentioned terminated contract and the subsequent conversion of architectural and professional services and copyrighted material, court costs, and for any other relief as the Court may deem appropriate.

## COUNT EIGHT– CONVERSION
### (B.L. Harbert and Johnny Garlington)

135.    The Plaintiff McKinney adopts and realleges paragraphs 1 through 134 of this Complaint.

136.    This is an action for conversion, the damages of which exceed the minimum jurisdictional limits of this Court.

137.    Defendants B.L. Harbert and Johnny Garlington were directly aware of the final contract (Owner-Architect Agreement) finalized in September and signed on September 19, 2018, by the developer Ron Durham as member of Portico, LLC, and Mack McKinney, in his individual capacity, to serve as architect.  (See Exhibit B).

138.    During performance of the contract, Defendants Ron Durham, Portico, LLC, B.L. Harbert, and Johnny Garlington were made aware by Plaintiff of the non-involvement of WHLC as McKinney's support team and his formation of a new project team.  (See Exhibit E).

139.    After months of having Plaintiff provide additional architectural design services, including a redesign of the entire project with the participation of B.L. Harbert and Johnny Garlington, Defendants B.L. Harbert and Johnny Garlington began to pressure Defendants Ron Durham and Portico, LLC, to move against project architect Mack McKinney as party to the Owner-Architect Agreement.

140.    Defendants B.L. Harbert and Johnny Garlington specifically and intentionally influenced Defendants Ron Durham and Portico, LLC, to terminate their Owner-Architect Agreement with Plaintiff McKinney as architect of record for Portico at Perdido Key.  As a result of the actions of Defendants B.L. Harbert and Johnny Garlington, Defendants Ron Durham and Portico, LLC, issued an unfounded and wrongful "Termination for Cause" letter notifying Plaintiff of his removal as architect of record allegedly due failure to advise the parties of WHLC's lack of involvement.  That pretext for termination was untrue and Defendants knew full well.

141.    AIA Document B101-2017, which is part of the Owner-Architect Agreement, states in pertinent part:

ARTICLE 7   COPYRIGHTS AND LICENSES

§ 7.1 The Architect and the Owner warrant that in transmitting <u>Instruments of Service</u>, or any other information, the transmitting party is <u>the copyright owner of such information</u> or has permission from the copyright owner to transmit such information for its use on the Project.

§ 7.2 The Architect and the <u>Architect's consultants shall be deemed the authors and owners of their respective Instruments of Service</u>, including the Drawings and Specifications, <u>and shall retain all common law, statutory and other reserved rights, including copyrights</u>.

§ 7.3 **<u>The Architect grants to the Owner a nonexclusive license to use the Architect's Instruments of Service</u>** solely and exclusively for purposes of constructing, using, maintain, altering and adding to the Project, **<u>provided that the Owner substantially performs its obligations under this Agreement</u>**, including prompt payment of all sums due pursuant to Article 9 and Article 11.

142.    The wrongful termination of Mack McKinney constitutes a material breach of the Agreement.  Due to the material breach of the Owner-Architect Agreement by Defendants Ron Durham and Portico, LLC, the developer <u>had no further right to use</u> Mack McKinney's copyrighted Instruments of Service or design concepts for construction of the condominium project known as "Portico at Perdido Key", nor did any other entity, including Defendant B.L. Harbert as general contractor.

143.    Defendants B.L. Harbert and Johnny Garlington were aware of the Owner-Architect Agreement and Article 7 of AIA Document B101-2017 providing that any license to use the Plaintiff's Instruments of Service were conditioned on Defendant Portico, LLC, performing its obligations under the agreement with Mack McKinney.

144.    Despite the Plaintiff's demands that Defendants not use his work on the condominium development, Defendant Ron Durham, Defendant Portico, LLC, Defendant B.L. Harbert, as general contractor, and Defendant Johnny Garlington have illegally incorporated and used Plaintiff Mack McKinney's copyrighted work, drawings, designs and Instruments of Service to proceed with construction of the project.

145.     Defendants solicited Fifth Dimension to provide those remaining contractual services that Mack McKinney had contracted to provide, including incorporating and using his copyrighted design concepts and Instruments of Service into the creation of the construction design documents, architectural drawings/plans necessary to build the condominium project.

146.     Construction of the project under Plaintiff Mack McKinney's design concept continues to advance towards completion with Defendants B.L. Harbert and Johnny Garlington as general contractor, and the project continues to be marketed for sale via websites and brochures using the design concept developed by Mack McKinney.

147.     The aforementioned intellectual property and work product of Plaintiff McKinney has been wrongfully used by Defendants to benefit them despite his demand that they not do so per the Agreement.  As construction continues to proceed, Defendants have made it clear that they will not cease and desist from their use of same in construction, nor will they return all architectural materials and design information used in construction and marketing of the project. The actions of the Defendants amount to conversion of Plaintiff's property, tangible and intangible, resulting in the deprivation of his valuable property and causing Plaintiff to suffer damages.

WHEREFORE, Plaintiff Mack McKinney demands judgment against Defendants B.L. Harbert and Johnny Garlington for compensatory damages associated with the above-mentioned conversion of architectural services and copyrighted material, including Court costs, and for any other relief as the Court may deem appropriate.

## COUNT NINE– UNJUST ENRICHMENT
### (B.L. Harbert and Johnny Garlington)

148.     The Plaintiff McKinney adopts and realleges paragraphs 1 through 147 of this Complaint.

149.    This is an action for unjust enrichment, the damages of which exceed the minimum jurisdictional limits of this Court.

150.    The Owner-Architect Agreement was wrongfully terminated by the Defendants. This was done at the behest of Defendants B.L. Harbert and Johnny Garlington, the general contractor. As a result, Plaintiff Mack McKinney was not fully compensated for his services rendered, or to be rendered.

151.    Under Article 7 of AIA Document B101-2017, "**The Architect grants to the Owner a nonexclusive license to use the Architect's Instruments of Service** solely and exclusively for purposes of constructing, using, maintain, altering and adding to the Project, **provided that the Owner substantially performs its obligations under this Agreement**, including prompt payment of all sums due pursuant to Article 9 and Article 11."

152.    Defendants, including Defendants B.L. Harbert and Johnny Garlington, were aware of the copyright protections provided to McKinney by the AIA Document in the event of wrongful termination.  Because of his wrongful termination, Plaintiff Mack McKinney was never compensated for Defendant B.L. Harbert's and Defendant Johnny Garlington's subsequent tortious and illegal use of AIA "copyrighted" materials which were absolutely necessary for their construction of the Portico at Perdido Key condominium project.

153.    Plaintiff McKinney did not supply any of the architectural and other professional services, labor, and expenses gratuitously, and Defendants B.L. Harbert and Johnny Garlington had knowledge of this fact.

154.    Defendants B.L. Harbert and Johnny Garlington, as the general contractor, have been unjustly enriched by the incorporation of Plaintiff McKinney's architectural designs and

Instruments of Service into their construction of the condominium project upon real property in which it has a direct equity interest, as well as a contractual interest.

WHEREFORE, Plaintiff Mack McKinney demand judgment against Defendants B.L. Harbert and Johnny Garlington for the reasonable value of the above-mentioned architectural and professional services, and expenses, and for any for any other relief as the Court may deem appropriate.

<u>**COUNT TEN– CONVERSION**</u>
<u>**(Fifth Dimension and Walter Fritts)**</u>

155.    The Plaintiff McKinney adopts and realleges paragraphs 1 through 154 of this Complaint.

156.    This is an action for conversion, the damages of which exceed the minimum jurisdictional limits of this Court.

157.    At all times material, Defendant Fifth Dimension and Defendant Walter Fritts, after being solicited to serve as architect of record, were aware of Plaintiff McKinney's position that, due to the material breach of the Owner-Architect Agreement by Defendant Ron Durham on behalf of Portico, LLC, the developer <u>had no further right to use</u> Mack McKinney's copyrighted Instruments of Service or design concepts for construction of the condominium project known as "Portico at Perdido Key", nor did any other entity or individual, including Defendant Fifth Dimension and Defendant Walter Fritts as architect of record.

158.    Despite the Plaintiff's prior demands that Defendants Ron Durham, Portico, LLC, and B.L. Harbert not use his work on the condominium development, and Fifth Dimension's and Walter Fritts' knowledge of same, they have proceeded to tortiously incorporate and use Plaintiff Mack McKinney's copyrighted work, drawings, designs and Instruments of Service to proceed

with creation of the construction design documents necessary for construction of the project, as well as other services.

159.    Construction of the project under Plaintiff Mack McKinney's design concept continues to advance towards completion with Defendant Fifth Dimension and Defendant Walter Fritts serving as architect of record, and the project continues to be marketed for sale via websites and brochures using the design concept developed by Mack McKinney. These Defendants have profited from their actions.

160.    The aforementioned intellectual property and work product of Plaintiff McKinney has been wrongfully used by these Defendants to benefit them.  As construction continues to proceed, Defendants have made it clear that they will not cease and desist from their use of same in furtherance of construction, nor will they return all architectural materials and design information used in construction and marketing of the project.  The actions of these Defendants amount to conversion of Plaintiff's property, tangible and intangible, resulting in the deprivation of valuable property and causing Plaintiff to suffer damages.

WHEREFORE, Plaintiff Mack McKinney demands judgment against Defendant Fifth Dimension and Defendant Walter Fritts, for compensatory damages associated with the above-mentioned architectural and professional services and copyrighted material, Court costs, and for any other relief as the Court may deem appropriate.

## COUNT ELEVEN – UNJUST ENRICHMENT
### (Fifth Dimension and Walter Fritts)

161.    The Plaintiff McKinney adopts and realleges paragraphs 1 through 160 of this Complaint.

162.    This is an action for unjust enrichment, the damages of which exceed the minimum jurisdictional limits of this Court.

163.   At all times material, Defendant Fifth Dimension and Defendant Walter Fritts, after being solicited to serve as architect of record, were aware of Plaintiff McKinney's position that, due in part to the material breach of the Owner-Architect Agreement by Defendant Ron Durham on behalf of Portico, LLC, and for other legal and factual reasons, the developer had no further right to use Mack McKinney's copyrighted Instruments of Service or design concepts for construction of the condominium project known as Portico at Perdido Key, nor did any other entity or individual, including Defendant Fifth Dimension and Defendant Walter Fritts as architect of record.

164.   All Defendants were aware of the copyright protections provided to McKinney by the AIA Document in the event of wrongful termination.  Because of his wrongful termination, Plaintiff Mack McKinney was never compensated for Defendant Fifth Dimension's and Defendant Walter Fritts' subsequent inappropriate and tortious use of Plaintiff McKinney's AIA "copyrighted" materials which were absolutely necessary for their creation of the construction design documents for the Portico at Perdido Key condominium project.  These Defendants profited greatly from their use of these materials.

165.   Plaintiff McKinney did not supply any of his architectural or professional services, labor, and expenses gratuitously, and all Defendants had knowledge of this fact.

166.   Defendant Fifth Dimension and Defendant Walter Fritts have been unjustly enriched by the incorporation of Plaintiff McKinney's architectural designs and Instruments of Service into their construction documents for the condominium project for which that have profited.

WHEREFORE, Plaintiff Mack McKinney demand judgment against Defendants Fifth Dimension and Walter Fritts for the reasonable value of the above-mentioned architectural and

professional services, and expenses, and for any for any other relief as the Court may deem appropriate.

## COUNT TWELVE– COPYRIGHT INFRINGEMENT
### 17 U.S.C. § 501 *et seq.*  and
### AIA DOCUMENT B101-2017

### (Fifth Dimension and Walter Fritts)

167.   The Plaintiffs adopt and reallege paragraphs 1 through 167 of this Complaint.

168.   This is an action for copyright infringement by Plaintiff M2 Studio, LLC, and Plaintiff M2 Studio PLLC, pursuant to 17 U.S.C. §501 *et seq*.  Additionally, this is an action of contractual copyright infringement by Plaintiff McKinney pursuant to the underlying Owner – Architect Agreement (AIA Document B101-2017).

169.   At all times material, these Defendants were aware that Plaintiff Mack McKinney supplied site-specific architectural design and other professional services that were necessary for the planning, design, and construction of the Portico at Perdido Key condominium project located at 14701 Perdido Key Drive, Pensacola, Florida, 32507.

170.   The Plaintiff's design concept became the chosen design for construction of the Portico at Perdido Key condominium project.  It was known to these Defendants that McKinney maintained the position that the Owner-Architect Agreement for his services was wrongfully terminated.

171.   These Defendants were also aware that Plaintiff's services incorporated Article 7 of AIA Document B101-2017, which provides: "**The Architect grants to the Owner a nonexclusive license to use the Architect's Instruments of Service** solely and exclusively for purposes of constructing, using, maintain, altering and adding to the Project, **provided that the**

**Owner substantially performs its obligations under this Agreement**, including prompt payment of all sums due pursuant to Article 9 and Article 11."

172.     Defendants Fifth Dimension and Walter Fritts were retained as architect of record with full knowledge of Plaintiff McKinney's position of wrongful termination, meaning no party had, or has, the right to use his copyrighted Instruments and Services, or other materials, without his express permission.  Accordingly, these Defendants' have engaged in the subsequent wrongful and tortious use of Plaintiff McKinney's AIA "copyrighted" materials in order to initiate and proceed with creation of the construction design documents for the Portico at Perdido Key condominium project.

173.     In addition to the foregoing, at all times relevant hereto, Plaintiff M2 Studio, LLC, and Plaintiff M2 Studio, PLLC, have been and still are the holders of exclusive rights under the Copyright Act of 1976 (17 U.S.C. § 101 et. seq) to use, license, reproduce, distribute, and/or display the site-specific architectural design concepts that are depicted in interior drawings of the subject building as architectural works and technical drawings, as well as associated renderings, which include the 2019 redesign of the Portico at Perdido condominium project.

174.     Specifically, Plaintiff M2 Studio, LLC, applied for and subsequently received Federal copyright registrations under the Copyright Act on his site-specific architectural design concepts.  Further, Plaintiff M2 Studio, PLLC, holds an interest in said registrations. Those Certificates of Registration are based upon interior drawings of the subject building as architectural works, technical drawings, and renderings, and they are recorded as VAu 1-447-490 (Registration Decision Date Nov. 2, 2021; Number VAu 1-447-490) and VAu 1-447-491

(Registration Decision Date Jan. 24, 2022; Number VAu 1-454-066). (See Exhibit O).  The
Certificates of Registration were received on November 2, 2021, and January 24, 2022.

175.    As addressed above, these Defendants have engaged in activity, by virtue of
creation of construction documents for the Portico at Perdido Key condominium project and
further distribution Federally copyrighted and AIA copyrighted Instruments of Service to others,
constituting copyright infringement regarding Plaintiff's' designs.

176.    As of the date of filing this Complaint, Defendants continue to proceed with
construction of Portico at Perdido Key based upon Plaintiffs' AIA copyrighted Instruments of
Service and Federally copyrighted works, which these Defendants have shared with other
Defendants who have wrongfully incorporated same into their own work.  All Defendants have
unlawfully and unjustly profited from this copyright infringement to the great detriment of
Plaintiffs, and Plaintiffs have suffered, and continue to suffer, severe financial losses.

177.    Defendants have committed all of the aforesaid acts deliberately, willfully,
maliciously and oppressively, without regard to Plaintiffs' proprietary rights.

178.    As result of the above-described conduct by Defendants, Plaintiffs have been
damaged in an amount to be proven at trial.

179.    By reason of the copyright infringement described above, Plaintiffs are entitled to
recover Defendants' profits to the extent that same are not included as part of their damages.

180.    In the alternative, at the election of Plaintiffs, they are entitled to recover from
Defendants statutory damages up to $150,000 per act of Federal copyright infringement for
Defendants' willful copyright infringement.

WHEREFORE, Plaintiffs pray for relief as follows:

(A)  For an Order enjoining Defendants, their officers, agents, employees, and those acting in concert or conspiracy with them, temporarily during the pendency of this action and permanently thereafter from:

       (iii)   infringing or continuing to participate in the in the infringement by others the subject copyrighted materials;

       (iv)   Copying, duplicating, selling, licensing, displaying, distributing, or otherwise using the copyrighted materials and designs to which Plaintiffs are the owners of exclusive rights under the respective copyrights or derivative works based thereon;

(B)  That Defendants be required to account for and pay over to Plaintiffs the actual damages suffered by Plaintiffs as a result of the infringement and any profits of the Defendants attributable to the infringement of Plaintiffs' copyright or exclusive rights under the copyright to pay such damages to Plaintiffs as to this Court shall appear just and proper within the provisions of the Copyright Act, or, in the alternative, at Plaintiffs' election, statutory damages for infringement of each separate copyright as set forth in 17 U.S.C § 504;

(C)  For an award of costs under 17 U.S.C § 505;

(D)  For an award of pre-judgment and post-judgment interest in the maximum amount permitted by law.

(E)  For such other and further relief as this Court deems just and proper.

ATTORNEYS FOR PLAINTIFFS,
LEWIS C. MCKINNEY, JR., (a/k/a MACK MCKINNEY),
M2STUDIO, LLC, and M2 STUDIO, PLLC


/s/ William D. Anderson
WILLIAM D. ANDERSON
Federal I.D. #ANDE-4995
Daniell, Upton, Anderson, Law & Busby, P.C.
30421 State Highway 181
Daphne, AL 36527
(251) 625-0046


**TO BE SERVED VIA CERTIFIED MAIL:**

PORTICO, LLC
Reg. Agent. Mary Kraemer, Esq.
4475 Legendary Dr.
Destin, FL 32541

RONALD O'NEILL DURHAM
1960 Stonegate Dr.
Birmingham, AL 35242

B.L. HARBERT INTERNATIONAL, L.L.C.
Reg. Agent – Corporation Service Company
1201 Hays St.
Tallahassee, FL 32301

JOHN E. GARLINGTON, JR.
223 E. Edgewood Dr.
Homewood, AL 35209-3913

FIFTH DIMENSION ARCHITECTURE AND INTERIORS, LLC
Reg. Agent – Registered Agents, Inc.
7901 4th St. N. # 300
St. Petersburg, FL 33702

WALTER D. FRITTS
2226 1st Ave. South, Ste. 101
Birmingham, AL 35233